UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| HARRY D. RAMSEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-cv-240 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3),

seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was

not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits.

On August 12, 2003, plaintiff filed his applications for DIB and SSI benefits, claiming an August

26, 2002 onset of disability.[1]  (A.R. 47-49, 374-75).  Plaintiff's claims were denied on initial review.

(A.R. 23-32, 376-80).  On August 30, 2005, plaintiff received a hearing before an administrative law

judge (ALJ) at which he was represented by counsel.  (A.R. 424-55).  On July 25, 2006, the ALJ

issued a decision finding that plaintiff was not disabled.  (A.R. 12-19).  On January 11, 2008, the

Appeals Council denied review (A.R. 6-8), and the ALJ's decision became the Commissioner's final

decision.

---

[1]In 2002 plaintiff filed an application for DIB benefits (A.R. 43-45) which was denied on
initial review on December 26, 2002 (A.R. 22), and that decision was never appealed.  The
unappealed decision on plaintiff's 2002 application for DIB benefits is not before the court for
review.  *See Califano v. Sanders*, 430 U.S. 99, 108 (1977); *see* 20 C.F.R. § 404.905.

On March 11, 2008, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits.  The three issues raised by plaintiff are as follows:

1.    THE ALJ COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE THE PROPER WEIGHT TO THE OPINION OF THE TREATING PHYSICIANS IN THIS CASE.

2.    THE ALJ COMMITTED REVERSIBLE ERROR BY FAILING TO FOLLOW THE VOCATIONAL EXPERT'S RESPONSES TO ACCURATE HYPOTHETICAL QUESTIONS.

3.    THE APPEALS COUNCIL FAILED TO NOTE THAT HIS [sic] FINDINGS REQUIRED A GRANT OF BENEFITS AS OF PLAINTIFF'S 50TH BIRTHDAY[.]

(Statement of Errors, Plf. Brief at 15, docket # 6).  Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision.   I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Walters*

-2-

*v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of August 26, 2002, through the date of the ALJ's decision.  Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. The ALJ found that plaintiff had the following severe impairments: "glenhumeral osteoarthritis of

the right shoulder, coronary artery disease, history of left carpal tunnel syndrome, depression, and history of cervical laminectomy." (A.R. 15). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 15). The ALJ determined that plaintiff's subjective complaints were not fully credible. (A.R. 16-17). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work reduced by the following limitations: lift up to five pounds maximum with the right arm and either frequently or occasionally; lift and carry up to 10 pounds maximum and occasionally and up to 5 pounds frequently with the left arm[;] sit at least six hours in an 8-hour workday; walk or stand two out of eight hours in a workday; no overhead work; occasional push[ing] and pulling; no forceful gripping or grasping; no temperature extremes; no more than occasional bending, twisting or turning[;] no crawling, squatting, kneeling or climbing; [and] no unprotected heights or moving machinery.

(A.R. 16). Plaintiff was unable to perform his past relevant work. (A.R. 17). Plaintiff was 45 years old as of the date of his alleged onset of disability and 49 years old as of the date of the ALJ's decision. Thus, at all times relevant to his claims, plaintiff was classified as younger individual. ALJ found that plaintiff has a limited education and is able to communicate in English. (A.R. 17). The transferability of job skills was not material because plaintiff's past relevant work was unskilled. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 16,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 451-52). The ALJ held that this constituted a significant number of jobs. Using Rule 201.18 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 12-19).

**1.**

Plaintiff argues that the *Appeals Council* erred when it failed to find that plaintiff was disabled on and his fiftieth birthday on February 4, 2007.  (Plf. Brief at 17-18, docket # 6; Reply Brief at 2, docket # 8).  This argument is frivolous.  The Appeals Council denied review and made no findings.  (A.R. 6-8).  The scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review.  *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").  The ALJ's July 25, 2006 decision finding that plaintiff was not disabled from his alleged onset of disability of August 26, 2002 through July 26, 2006 is the Commissioner's final decision before this court for review.

For more than fifteen years it has been the clearly established law of the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.  Plaintiff persistently invites the court to commit error by considering evidence that was not before the ALJ in determining whether the ALJ's decision is supported by substantial evidence.  (Plf. Brief at 10-11, 15-18).  This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The court is not authorized to consider additions to the

record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996).

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand to the Commissioner "pursuant to either Sentence Four or Sentence Six of 42 U.S.C. § 405(g)." (Plf. Brief at 19). An identical requests appears at the end of plaintiff's reply brief. (Reply Brief at 4). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence plaintiff now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The June 27, 2006 and June 30, 2006 letters from Susan Day, M.D. (A.R. 405, 407) and her progress notes dated

August 3, 2006 (A.R. 404) are new because they generated after the ALJ's June 25, 2006 decision finding that plaintiff was not disabled. *See Hollon*, 447 F.3d at 483-84; *Foster*, 279 F.3d at 357; *see also Templeton v. Commissioner*, 215 F. App'x 458, 463 (6th Cir. 2007). The other records proffered by plaintiff are not new because they are dated before the ALJ's decision. (A.R. 406, 408-23).

Contrary to plaintiff's attorney's assumption, "good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *Oliver*, 804 F.2d at 966; *see also Brace v. Commissioner*, 97 F. App'x 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing before the ALJ did not establish good cause); *Cranfield v. Commissioner*, 79 F. App'x 852, 859 (6th Cir. 2003). Plaintiff has not addressed or carried his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hensley v. Commissioner*, 214 F. App'x 547, 550 (6th Cir. 2007). Plaintiff has not addressed or carried his burden of demonstrating materiality. The proffered records show that on February 10, 2006, months after the ALJ hearing, Dr. Day performed surgery on plaintiff's right shoulder, a right carpal tunnel release, and a steroid injection on plaintiff's left shoulder (A.R. 408-11), and that after surgery, plaintiff experienced an increased range of motion

in his shoulders.  (A.R. 412).  There is no evidence of any effort by plaintiff to submit these records

to the ALJ before he issued his decision on June 25, 2006.  I find that the proffered records from Dr.

Day would not have reasonably persuaded the Commissioner to reach a different conclusion with

regard to whether plaintiff was disabled during the relevant period from August 26, 2002 through

July 25, 2006.

    Plaintiff has not demonstrated that remand pursuant to sentence six of  42 U.S.C. §

405(g) is warranted.  I recommend that plaintiff's requests for a sentence six remand be denied.

Plaintiff's arguments will be evaluated on the record presented to the ALJ.

## 2.

    Plaintiff argues that the ALJ failed to give adequate weight to the opinions of his

treating physicians, Sudhir B. Rao, M.D. and Susan M. Day, M.D., and that he failed to comply with

the procedural requirement of providing "good reasons" for rejecting their opinions.  (Plf. Brief at

15-17).  I find that plaintiff's arguments are meritless.

    The issue of whether the claimant is disabled within the meaning of the Social

Security Act is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e); *see Warner*

*v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Commissioner*, 280 F. App'x

472, 474 (6th Cir. 2008).  "Generally, the opinions of treating physicians are given substantial, if not

controlling deference."  *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating

physician's opinion is not entitled to controlling weight where it is not "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other

substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Cox v.*

*Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008)("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record.").  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008).  An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

        Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors.  *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d);  *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

        The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."  *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  "The procedural requirement exists, in part, for

-9-

claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876.

Upon review, I find no violation of the treating physician rule and that the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to the opinions of plaintiff's treating physicians.

A.    Dr. Day

Plaintiff's argument that the ALJ failed to give sufficient weight to Dr. Day's opinions as a treating physician is patently meritless. The argument is premised on records that plaintiff never presented to the ALJ (Plf. Brief at 10-11). It was not error for the ALJ to fail to give weight to evidence that he never received. The evidence from Dr. Day that was in the record submitted to the ALJ did not establish a treating physician relationship, and in any event, the ALJ's RFC determination was consistent with Dr. Day's medical assessment.

On August 5, 2002, Dr. Day conducted a consultative medical evaluation of plaintiff's right shoulder. (A.R. 165-68). The opening paragraph of her report emphasized that "no treatment [would] be rendered as a result of this examination." (A.R. 165). Dr. Day noted that plaintiff's work involved heavy, manual labor and significant overhead work and lifting. Most of plaintiff's shoulder pain was work related. Evaluation of plaintiff's right shoulder revealed that it had a reduced range of motion when compared to plaintiff's left shoulder. A comparison of plaintiff's right and left arms indicated a "a mild amount of atrophy" on the right. A drop arm test was "mildly positive," and impingement testing of the right shoulder was "mildly positive." (A.R. 167). Dr. Day recommended that plaintiff avoid overhead activity and avoid heavy lifting because it would continue to aggravate

his right shoulder pain. (A.R. 168). On September 23, 2002, Dr. Day drafted a two-paragraph addendum to her report. (A.R. 162). She stated that plaintiff's August 28, 2002 EMG (A.R. 163-64) did not indicate any involvement of plaintiff's cervical spine in his shoulder pain. The EMG did show evidence of bilateral carpal tunnel and left cubital tunnel syndrome. (A.R. 162).

On October 1, 2003, Dr. Day conducted a second evaluation. (A.R. 343-48). She was very careful to document that she was not acting as a treating physician in making this evaluation. "No treatment or medical advice was given. No prescriptions or medical therapy was provided. [The] evaluation [did] not constitute a doctor-patient relationship." (A.R. 343). Upon examination Dr. Day found that plaintiff's overhead motion on the right was only about 80 degrees compared to 140 degrees on the left. Plaintiff was able to touch his lower back. The circumference of plaintiff's upper arm and forearm appeared to be within normal limits. Plaintiff did display a positive drop arm test. (A.R. 346). Dr. Day indicated that plaintiff had a history of three surgical procedures on his right shoulder attempting to repair relatively small rotator cuff tears. (A.R. 347). X-rays of plaintiff's right shoulder revealed a "well-maintained glenohumeral space." (A.R.347). When this x-ray evidence was combined with Dr. Day's observations regarding plaintiff's lack of discomfort with a passive range of arm movement, she concluded that "if [plaintiff] had some glenohumeral arthrosis," it was "mild." (A.R. 347). Dr. Day recommended a re-evaluation of plaintiff's right shoulder rotator cuff with "an MRI arthrogram to evaluate the rotator cuff and to ascertain whether there [was] a repairable cuff tear." (A.R. 348). If a tear amenable to repair was discovered, Dr. Day recommended performing a surgical repair because plaintiff had retired and was no longer performing aggressive overhead work of any type. (A.R. 348). The ALJ's RFC determination

expressly incorporated the restrictions that Dr. Day had specified in her October 1, 2003 assessment. (A.R. 17).

Plaintiff testified at the August 30, 2005 hearing that he had been evaluated by Dr. Day on August 29, 2005. Plaintiff met with Dr. Day and they had discussed the possibility of having Dr. Day first perform surgery on his right shoulder, possibly followed at a later date by surgery on plaintiff's left shoulder. (A.R. 435-36). Dr. Rao would not perform additional surgeries. (A.R. 435). According to plaintiff, he and Dr. Day also discussed possible hip replacement surgeries. (A.R. 436). Plaintiff did not testify whether he intended to go forward with any of the surgical procedures he had discussed with Dr. Day on the day before his administrative hearing. Plaintiff's attorney never asked the ALJ to keep the record open to allow plaintiff to supplement the record with additional records from Dr. Day. Plaintiff did not provide the ALJ with evidence sufficient to establish that Dr. Day had a treating physician relationship with plaintiff at any time before the ALJ hearing. I find no error.

A.    Dr. Rao

It is beyond question that Dr. Rao was plaintiff's treating orthopedic surgeon for plaintiff's right shoulder problem. Dr. Rao performed three surgeries on plaintiff's right shoulder to address rotator cuff tears: January 30, 1998 (A.R. 230-31); February 2, 1999 (A.R. 228-29); and January 28, 2002 (A.R. 194-96). On December 5, 2003, Dr. Rao stated that he would not be providing any further surgical intervention because he was not aware of any surgical procedure that would reliably improve plaintiff's right shoulder. (A.R. 322). On or after July 1, 2004, Dr. Rao completed a "Physician's Medical Report" addressed to the Board of Trustees of the Michigan

Laborer's Pension Fund.[2] (A.R. 324-25). Dr. Rao stated that plaintiff's shoulder problems prevented him from engaging in his "regular occupation" as a laborer since January 24, 2003. (A.R. 324). Dr. Rao reported that plaintiff was permanently restricted from employment which required him to lift more than ten pounds and plaintiff could not perform overhead lifting. (A.R. 325). These restrictions were incorporated into the ALJ's RFC determination. (A.R. 17). On May 4, 2005, plaintiff reported experiencing pain in his right shoulder. Dr. Rao wrote, "He states he has been working-out a lot and his pain may be related to this." (A.R. 311). On May 13, 2005, Dr. Rao noted that a recent MRI of plaintiff's left shoulder indicated a "very small rotator cuff tear." Dr. Rao recommended conservative treatment rather than surgical intervention. (A.R. 308). Plaintiff's May 2005 MRI of his right shoulder showed no evidence of a rotator cuff tendon tear. (A.R. 299).

The ALJ discounted nothing that appeared in Dr. Rao's medical records. The only opinions that the ALJ rejected are found in an unsworn statement dated August 3, 2005, that Attorney Thomas M. Stellard took from Dr. Rao. (A.R. 370-74). In this statement, Dr. Rao related that his treatment of plaintiff had been limited to addressing plaintiff's "bilateral shoulder problems." (A.R. 373). Attorney Stellard elicited an opinion from Dr. Rao that plaintiff's shoulder pain would prevent plaintiff from performing "a regular job,"[3] without any indication of what that job would be or its exertional demands:

---

[2]Dr. Rao's report to the pension fund trustees is not dated. The report indicated that the most recent examination by Dr. Rao took place on July 1, 2004 (A.R. 324). Plaintiff testified at the August 30, 2005 hearing that he was awarded a disability pension and is receiving a payment of $2,730.00 per month. (A.R. 445).

[3]Dr. Rao was obviously familiar with the plaintiff's work history of performing heavy labor as a bridge builder and construction worker because he had submitted a report to the trustees of the pension fund indicating that plaintiff was disabled from performing that type of work. It is not clear from the statement whether Dr. Rao was referring to a "regular job" at the heavy exertional level.

-13-

TMS:        Based on your treatment of him, do you have an opinion as to his ability to work on a regular basis, and by that we mean: eight hours a day, five days a week, week after week, regularly and consistently?

DR. RAO:    Yes, I do have an opinion.

TMS:        What is that opinion?

DR. RAO:    I do not think the patient can work consistently, fulltime as you have described.

TMS:        What is your reason for that conclusion?

DR. RAO:    The patient has severe pain in the shoulders that would preclude him from working a regular job.

                                    * * *

TMS:        Would his problems with his shoulders interfere with his ability to lift or carry weight?

DR. RAO:    Yes.

TMS:        Do you have an opinion as to what limitations he would be subjected as a result of his shoulder pain?

DR. RAO:    I would not allow him to consistently lift overhead or lift anything more than five pounds above the above the horizontal level for a work situation.

(A.R. 371-72).

        The ALJ discounted these opinions because they were more restrictive than the limitations that Dr. Rao had previously expressed in support of plaintiff's disability pension claim, and because the administrative record showed that plaintiff continued to perform daily activities requiring physical exertions far in excess of the proffered restrictions:

        As for the opinion evidence, the undersigned discounts the opinion of Sudhir Rao, M.D., when he indicates that the claimant would not be able to work on a full-time basis due to pain in his right shoulder.  (Exhibit 23F).  Dr. Rao's opinion is not consistent with the report he gave the Michigan Laborer's Pension Fund in which he suggested that although the claimant

-14-

was disabled from his usual occupation as a laborer, he could perform some work within restriction of no lifting of over 10 pounds and no overhead lifting (Exhibit 15F/17). Dr. Rao's opinion is also not consistent with the evidence that the claimant effectively manages his pain with medication that provides long periods of relief and the claimant is able to further manage the pain by avoiding activities that aggravate the pain. His activities of daily living as reported show that he is able to perform such recreational activities as hunting and fishing and do light work activities such as yard work, paying the bills and driving a car. He accommodates his impairment by avoiding activities such as dragging a deer after he has killed it or not doing yard work requiring him to raise his arms to trim a bush.

(A.R. 17). This explanation was more than adequate. I find no violation of the treating physician rule, and no violation of the procedural rule requiring that the ALJ provide good reasons for the weight given to plaintiff's treating physician's opinions.

### 3.

Plaintiff argues that the ALJ "committed reversible error by failing to follow the vocational expert's responses to accurate hypothetical questions," referring to plaintiff's attorney's questions and the ALJ's questions to the vocational expert assuming that full credibility would be given to plaintiff's testimony regarding his subjective functional limitations. (Plf. Brief at 17) (citing A.R. 452-53). But the ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 16-17). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue*, 266 F. App'x 451, 461 (6th Cir. 2008); *Myatt v. Commissioner*, 251 F. App'x 332, 336 (6th Cir. 2007). The ALJ was not bound in any way by a VE's responses to a hypothetical questions incorporating a contrary assumption.

To the extent that plaintiff is now challenging the ALJ's credibility determination, the ALJ's credibility determination is supported by more than substantial evidence. This court does

not make its own credibility determinations. *See Jordan v. Commissioner*, 548 F.3d 417, 422 (6th Cir. 2008); *see McGlothin v. Commissioner*, 299 F. App'x 516 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's subjective complaints were not fully credible. Plaintiff continued to hunt deer, catch fish, drive a car, and perform yard work. He was independent in his self-care and went out to dinner and to the movies on a weekly basis. (A.R. 16-17; *see* A.R. 79-91, 113-20, 433-49). It was entirely appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see*

-16-

*also Cox v. Commissioner*, 295 F. App'x 27, 33-34 (6th Cir. 2008).  I find that the ALJ's credibility determination is supported by more than substantial evidence.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   March 2, 2009               /s/  Joseph G. Scoville_____
                                     United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).